UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA

RECEIVED IN CLERK'S OFFICE
U.S.D.C. - Newnan

MAR 28 2023

KEVIN P. WEIMER, Clerk
By: _____ Deputy Clerk

KALAIAH JEFFERSON as )
assignee of )
JONATHAN HANSLEY )   CASE NO:
Plaintiff, )

v. )

EXETER FINANCE, LLC )
Defendant. )
)   JURY DEMAND
)
)

## COMPLAINT

NOW COMES THE PLAINTIFF, JONATHAN HANSLEY , and for his Complaint against the Defendants plead as follows:

### JURISDICTION AND VENUE

1. Jurisdiction of this court arises under 15 U.S.C. §1681p and generally under 28 U.S.C. § 1331.

2. This is an action brought by a consumer for violation of the Fair Credit Reporting Act (15 U.S.C. § 1681, et seq. [hereinafter "FCRA"]). Truth In Lending Act

3. The transactions and occurrences which give rise to this action occurred in the City of Douglas, Coffee County, Georgia.

4. Venue in this court is proper in the Northern District of Georgia.

## PARTIES

5. Plaintiff is a natural person residing in the City of Douglas, Coffee County, Georgia.

6. Defendant Exeter Finance, LLC is located in 2101 W John Carpenter Fwy Irving, Texas 75063 that conducts business in the State of Georgia

7. Plaintiff is a 36 year-old natural "person," as defined by 47 U.S.C. § 153(39), residing at 900 Wheeler Ave N, Apt 705, Douglas, Georgia which lies within the Northern District of Georgia.

8. Exeter is a financing company with a headquarters located at 2101 W John Carpenter FWY, Irving, Texas. Exeter issues and services loans to consumers throughout the country, including in Georgia.

## GENERAL ALLEGATIONS

9. On December 12, 2020, plaintiff signed a fraudulent contract with defendant.

10. The subject debt arose in 2020 after the plaintiff financed the purchase of a 2019 Kia Optima.

11. Plaintiff fell on hard times due to Covid-19 Pandemic and was not able to keep up with the payments on his auto loan contract.

12. Plaintiff quickly realized that the contract with the defendant was fraudulent.

13. Plaintiff wasn't made aware of his right to rescind; he was coerced into signing without a full explanation of what the agreement meant.

14. Plaintiff was never told by Defendant (Exeter Finance, LLC) that he had 3 days to rescind the transaction nor was he given the notices that come along with all consumer credit transactions.

### 15 U.S. Code § 1635 - Right of rescission as to certain transactions

(a)DISCLOSURE OF OBLIGOR'S RIGHT TO RESCIND
Except as otherwise provided in this section, in the case of any consumer credit transaction (including opening or increasing the credit limit for an open end credit plan) in which a security interest, including any such interest arising by operation of law, is or will be retained or acquired in any property which is used as the principal dwelling of the person to whom credit is extended, the obligor shall have the right to rescind the transaction until midnight of the third business day following the consummation of the transaction or the delivery of the information and rescission forms required under this section together with a statement containing the material disclosures required under this subchapter, whichever is later, by notifying the creditor, in accordance with regulations of the Bureau, of his intention to do so. The creditor shall clearly and conspicuously disclose, in accordance with regulations of the Bureau, to any obligor in a transaction subject to this section the rights of the obligor under this section. The creditor shall also provide, in accordance with regulations of the Bureau, appropriate forms for the obligor to exercise his right to rescind any transaction subject to this section.

(b)RETURN OF MONEY OR PROPERTY FOLLOWING RESCISSION
When an obligor exercises his right to rescind under subsection (a), he is not liable for any finance or other charge, and any security interest given by the obligor, including any such interest arising by operation of law, becomes void upon such a rescission. Within 20 days after receipt of a notice of rescission, the creditor shall return to the obligor any money or

property given as earnest money, downpayment, or otherwise, and shall take any action necessary or appropriate to reflect the termination of any security interest created under the transaction. If the creditor has delivered any property to the obligor, the obligor may retain possession of it. Upon the performance of the creditor's obligations under this section, the obligor shall tender the property to the creditor, except that if return of the property in kind would be impracticable or inequitable, the obligor shall tender its reasonable value. Tender shall be made at the location of the property or at the residence of the obligor, at the option of the obligor. If the creditor does not take possession of the property within 20 days after tender by the obligor, ownership of the property vests in the obligor without obligation on his part to pay for it. The procedures prescribed by this subsection shall apply except when otherwise ordered by a court.

(c)REBUTTABLE PRESUMPTION OF DELIVERY OF REQUIRED DISCLOSURES
Notwithstanding any rule of evidence, written acknowledgment of receipt of any disclosures required under this subchapter by a person to whom information, forms, and a statement is required to be given pursuant to this section does no more than create a rebuttable presumption of delivery Thereof.

(d)MODIFICATION AND WAIVER OF RIGHTS
The Bureau may, if it finds that such action is necessary in order to permit homeowners to meet bona fide personal financial emergencies, prescribe regulations authorizing the modification or waiver of any rights created under this section to the extent and under the circumstances set forth in those regulations.

(e)EXEMPTED TRANSACTIONS; REAPPLICATION OF PROVISIONS
This section does not apply to—
    (1)a residential mortgage transaction as defined in section 1602(w)[1] of this title;
    (2)a transaction which constitutes a refinancing or consolidation (with no new advances) of the principal balance then due and any accrued and unpaid finance charges of an existing extension of credit by the same creditor secured by an interest in the same property;
    (3)a transaction in which an agency of a State is the creditor; or
    (4)advances under a preexisting open end credit plan if a security interest has already been retained or acquired and such advances are in accordance with a previously established credit limit for such plan.

**(f) TIME LIMIT FOR EXERCISE OF RIGHT**

An obligor's right of rescission shall expire three years after the date of consummation of the transaction or upon the sale of the property, whichever occurs first, notwithstanding the fact that the information and forms required under this section or any other disclosures required under this part have not been delivered to the obligor, except that if (1) any agency empowered to enforce the provisions of this subchapter institutes a proceeding to enforce the provisions of this section within three years after the date of consummation of the transaction, (2) such agency finds a violation of this section, and (3) the obligor's right to rescind is based in whole or in part on any matter involved in such proceeding, then the obligor's right of rescission shall expire three years after the date of consummation of the transaction or upon the earlier sale of the property , or upon the expiration of one year following the conclusion of the proceeding, or any judicial review or period for judicial review thereof, whichever is later.

**(g) ADDITIONAL RELIEF**

In any action in which it is determined that a creditor has violated this section, in addition to rescission the court may award relief under section 1640 of this title for violations of this subchapter not relating to the right to rescind.

**(h) LIMITATION ON RESCISSION**

An obligor shall have no rescission rights arising solely from the form of written notice used by the creditor to inform the obligor of the rights of the obligor under this section, if the creditor provided the obligor the appropriate form of written notice published and adopted by the Bureau, or a comparable written notice of the rights of the obligor, that was properly completed by the creditor, and otherwise complied with all other requirements of this section regarding notice.

15. Plaintiff exercised his right of Rescission Pursuant to 15 U.S.C 1635, on January 09, 2023 by sending a rescission letter via certified mail as well as the CFPB (Consumer Financial Protection Bureau).

16. Exeter Finance responded to the CFPB complaint on January 24, 2023, stating the details of how the contract began along with attachments of a contract and statement of

account.

17. The alleged contract that Exeter has on file is not the contract that the plaintiff signed. Exeter's contract contains a forged signature.

18. Plaintiff sent a Cease and Desist and Affidavit of Fact as well as a notice stating that the contract they sent is not the original contract also the signature not being the plaintiffs, via certified mail and the CFPB on January 25, 2023, to Exeter Finance.

19. Exeter Finance sent two letters via mail on January 31, 2023, to the plaintiff, one stating the validation of the debt and the other responding to his rescission notice.

20. The rescission letter that was sent by the plaintiff was disregarded, ignored, and rejected by Exeter. They claimed that the auto sales finance contracts did not include the right to rescind indirectly. They stated, "Regarding the Affidavit of Revocation of Signature and Notice of Rescission, you are citing statutes and regulations that are either wholly unrelated to Exeter Finance or otherwise inapplicable to the circumstances surrounding your account. Unlike what you may have experienced with a mortgage refinance or home equity line of credit, the Truth in Lending Act ("TILA*") and its implementing regulations does not provide for a right to rescission for indirect auto sales finance contracts, such as the contract into which you entered. You will remain responsible for the contractual terms, to which you agreed."

15 U.S. Code § 1640 - Civil liability

(a)INDIVIDUAL OR CLASS ACTION FOR DAMAGES; AMOUNT OF AWARD; FACTORS

DETERMINING AMOUNT OF AWARD

Except as otherwise provided in this section, any creditor who fails to comply with any requirement imposed under this part, including any requirement under section 1635 of this title, subsection (f) or (g) of section 1641 of this title, or part D or E of this subchapter with respect to any person is liable to such person in an amount equal to the sum of—

(1)any actual damage sustained by such person as a result of the failure;

(2)

(A)

(i)in the case of an individual action twice the amount of any finance charge in connection with the transaction, (ii) in the case of an individual action relating to a consumer lease under part E of this subchapter, 25 per centum of the total amount of monthly payments under the lease, except that the liability under this subparagraph shall not be less than $200 nor greater than $2,000, (iii) in the case of an individual action relating to an open end consumer credit plan that is not secured by real property or a dwelling, twice the amount of any finance charge in connection with the transaction, with a minimum of $500 and a maximum of $5,000, or such higher amount as may be appropriate in the case of an established pattern or practice of such failures; [1] or (iv) in the case of an individual action relating to a credit transaction not under an open end credit plan that is secured by real

property or a dwelling, not less than $400 or greater than $4,000; or together with a reasonable attorney's fee as determined by the court;

21. Plaintiff then sent via certified mail Cease and Desist and Affidavit of Fact, to Jason Wade Grub, Exeter's Chief Executive Officer, on February 14, 2023, along with a CFPB Complaint, informing Jason Wade Grub of the fraud in the contract.

22. The defendant sent a letter via mail to the plaintiff stating that they would reduce the payment for half of what's "owed" on the loan.

23. On February 21, 2023, the plaintiff then decided to file for arbitration with the AAA (American Arbitration Association) which was stated in the arbitration clause in the original contract and what to do if there was any dispute between the two parties.

24. On March 6, 2023, the parties' representatives (Kalaiah Jefferson, assignee plaintiff, and Tim Patterson and Ashlee Yates, representing the defendant), were contacted by the AAA Consumer Filing Team via shared email, stating that the demand for arbitration needed to be signed and emailed back to proceed.

25. One of the representatives of the defendants (Tim Patterson) sent a message through the shared email asking for the arbitration agreement between both parties. Kalaiah Jefferson, the assignee of plaintiff, responded with the requested document along with the arbitration paperwork that needed to be signed in order to proceed with arbitration.

26. After the representative for Exeter received the documents he requested from the

assignee, he stated that the plaintiff did not have the right to arbitrate due to the plaintiff not having an arbitration clause in his contract with Exeter.

27. Assignee provided necessary documents proving that there was in fact an arbitration agreement in the contract between the plaintiff and the defendant.

28. On March 10, 2023, Exeter Finance wrote to the plaintiff via mail threatening legal action if the plaintiff continued to contact them about the fraudulent contract.

29. On March 14, 2023 The AAA's Consumer Filing Team emailed all parties stating that the arbitration case was closed due to Exeter Finance not meeting any of the Requirements.

### Count I
### NEGLIGENT VIOLATION OF THE TRUTH IN LENDING ACT AGAINST EXETER FINANCE

30. The plaintiff relates the above paragraphs as if they were recited verbatim.

31. The TILA, pursuant to 15 U.S.C § 1601 protects consumers against inaccurate and unfair credit billing and credit card practices. TILA also requires lenders to give specific disclosures about important terms, including the APR (annual percentage rate), before being legally obligated for the loan.

32. In response, Exeter Finance used the CFPB website to present a fictitious contract that the plaintiff had never seen or signed. The plaintiff left the dealership with a contract that was entirely different from the one provided by the defendant.

33. A creditor who violates the Truth-In-Lending Act (TILA) faces actual and statutory

damages and rescission of the transaction for up to three years (15 U.S.C. 1635 statues; Beach v. Owen Federal Bank. 523 U.S. 410 (1998).

34. Exeter broke the terms of the TILA by altering the annual percentage, the loan's original cost, and the plaintiffs' rights, including the right to rescind the contract. Any agreement that plaintiff may have signed or agreed on became null and void due to the contract being fraudulent.

## Count II
## VIOLATIONS OF THE FAIR DEBT COLLECTIONS PRACTICES ACT AGAINST DEFENDANTS

35. The plaintiff refers to the above paragraphs as if they were recited verbatim.

36. Plaintiff is a "consumer" as defined by 15 U.S.C. §1692a(3) of the FDCPA.

## COUNT III
## NEGLIGENT VIOLATION OF GEORGIA CONSUMER FRAUD AND DECEPTIVE FAIR BUSINESS PRACTICES ACT AGAINST DEFENDANTS

37. The plaintiff refers to the above paragraphs as if they were recited verbatim.

38. Plaintiff has standing to sue under FBPA pursuant to O.C.G.A. Title 10, Ch. 1, Article 15 Deceptive or Unfair Practices Pts. 1-7 and Part 2 Fair Business Practices ( 10-1-390 — 10-1-408).

39. The FBPA:
"prohibits unfair and deceptive acts or practices in the marketplace."

40. This law applies to consumer transactions involving the sale, lease, or rental of goods, services, or property mainly for personal, family, or household purposes."

41. Exeter violated the Fair Business Practices Act by engaging in an unfair and deceptive act or practice with their fraudulent contract.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Jonathan Hansley respectfully requests this Court award the Following:

a. Actual Damages,

b. Statutory Damages for each violation of the FCRA;

c. Punitive Damages;

d. Costs and reasonable attorney's fees pursuant to the FCRA;

e. Correction of all misreported information on Plaintiff's Equifax, Experian, and TransUnion credit reports; and

f. For such other and further relief as may be just and proper.

g. Awarding any other relief as this Honorable Court deems just and appropriate.

Respectfully Submitted,
Kalaiah Jefferson
PO BOX 2234
Douglas, Ga 31534
772-801-9417
Kalaiahjefferson17@gmail.com

Kalaiah Jefferson
P.O. Box 2234
Douglas, GA 31534

7022 3330 0000 5770 0397


UNITED STATES POSTAL SERVICE
RDC 99

30263

U.S. POSTAGE PAID
FCM LG ENV
DOUGLAS, GA
31533
MAR 22, 23
AMOUNT
**$6.13**
R2305E125029-40

Lewis R. Morgan Federal Building
and United States Courthouse
18 Greenville Street
Newnan, GA 30263

CLEARED DATE
MAR 27 2023
U.S. Marshals Service
Atlanta, GA 30303